UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BENJAMIN BRAXTON, also known as
Obed/Edom Braxton,

                          Plaintiff,

                                                                        9:19-CV-0073
v.                                                                      (LEK/ML)

E. BELL, Superintendent, Clinton
Correctional Facility; HOLLAND, Sergeant,
Clinton Correctional Facility; MARION,
Sergeant, Clinton Correctional Facility;
VONDA JOHNSON, M.D., Clinton
Correctional Facility; SUSAN DEVLIN
VARIN, FNPC, Chief Administrator; and
A. MERRIMAN, N.P., Clinton Correctional
Facility,

                          Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

BENJAMIN BRAXTON
  *Pro Se* Plaintiff
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

LETITIA A. JAMES                                            MELISSA LATINO, ESQ.
Attorney General for the State of New York                 Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224


MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

        Currently before the Court, in this civil rights action filed by Benjamin Braxton

("Plaintiff") against E. Bell, Holland, Marion, Vonda Johnson, Susan Devlin-Varin, and A.

Merriman ("Defendants"), is Defendants' motion for summary judgement pursuant to Fed. R.

Civ. P. 56.  (Dkt. No. 90.)  For the reasons set forth below, I recommend that Defendants'

motion for summary judgement be granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint asserts that—pursuant to

the Eighth Amendment and 42 U.S.C. § 1983—Defendants Holland and Marion failed to protect

her,[1] and Defendants Devlin-Varin, Bell, Johnson, and Merriman were indifferent to her medical

needs, while she was incarcerated at Clinton Correctional Facility ("Clinton").  (*See generally*

Dkt. Nos. 31, 32.)  The Court's Decision and Order dated August 21, 2019, thoroughly outlines

the factual allegations and causes of action alleged in Plaintiff's Amended Complaint.[2]  (Dkt.

No. 31 at 4-8.)

### B.    Procedural History

On January 22, 2019, Plaintiff commenced this civil rights action by the filing of a

Complaint.  (Dkt. No. 1.)  On April 26, 2019, Senior United States District Judge Lawrence E.

Khan issued an order that granted Plaintiff's IFP application, and—after reviewing the

Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A—permitted the action to go forward

---

[1]    Plaintiff has filed pleadings and motions under the name Benjamin Braxton/Braxton Obed Edom and uses female pronouns "she" and "her" when referring to herself.  Accordingly, the Court also refers to Plaintiff using those pronouns.  However, Plaintiff is incarcerated under the name "Benjamin Braxton."  DOCCS Inmate Search, http://nysdoccslookup.doccs.ny.gov (last visited January 28, 2022).  Therefore, the Court uses the name Benjamin Braxton in the docket, the caption of orders, and mailings to Plaintiff.

[2]    Plaintiff also asserted a failure to protect claim pursuant to the Eighth Amendment and 42 U.S.C. § 1983, against Defendant Bell.  (*See generally* Dkt. No. 32.)  However, that claim was dismissed by the Court and Plaintiff was not granted leave to amend that claim.  (Dkt. No. 15 at 11-14; Dkt. No. 31 at 11-12.)

with respect to Plaintiff's claim against Defendant Devlin-Varin for medical indifference.[3]  (Dkt. No. 12.)

On June 3, 2019, Plaintiff filed a motion to amend the complaint.  (Dkt. No. 24.)  On August 21, 2019, Plaintiff's motion was granted with respect to her claims that Defendants Holland and Marion failed to protect her, and Defendants Devlin-Varin, Bell, Johnson, and Merriman were indifferent to her medical needs, while she was incarcerated at Clinton.  (Dkt. No. 31.)  However, Plaintiff's motion was denied with respect to her claim that Defendant Bell failed to protect her.  (*Id.*)

On June 25, 2021, Defendants filed the pending motion for summary judgment.  (Dkt. No. 90.)  On October 8, 2021, Plaintiff filed a response in opposition to Defendants' motion.  (Dkt. No. 109.)  On October 22, 2021, Defendants filed a letter reply in further support of their motion.  (Dtk. No. 113.)  On October 29, 2021, Plaintiff filed a motion to file a sur-reply (which was improperly docketed as a sur-reply to Defendants' reply).  (Dkt. No. 114.)  On October 29, 2021, the Clerk of the Court was directed to strike Plaintiff's sur-reply because it was filed without permission from the Court.  (Dkt. No. 115.)

### C.    Defendants' Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Statement of Material Facts and not denied by Plaintiff in her response.[4]  (*Compare* Dkt. No. 90, Attach. 1 [Defs.' Statement of Material Facts], *with* Dkt. No. 109 [Pl.'s Resp.].)

---

[3]    Judge Kahn's order also dismissed for failure to state a claim upon which relief may be granted, Plaintiff's claims against Defendants Bell, Holland, Marion, Merriman, and Johnson. (Dkt. No. 15.)

[4]    The Court notes that Plaintiff's Amended Complaint (Dkt. No. 32) and his opposition papers (Dkt. No. 109) were not signed to under penalty of perjury.  As a result, the facts asserted therein are not properly evidence before the Court for purposes of this motion.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on

1.      Plaintiff, Benjamin Braxton, is an individual held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

2.      Defendants were, at all times relevant to the allegations in the Amended Complaint, employees of DOCCS.

<u>Facts Related to Plaintiff's Medical Indifference Claim</u>

3.      Besides having reviewed and approved Plaintiff's referral for an x-ray on May 17, 2018, Defendant Johnson was not involved in the treatment of Plaintiff for her "TMJ" condition.

4.      In December 2018, Defendant Johnson left her position as Facility Health Services Director at Clinton.  She was succeeded by Director Bodrogi.

5.      Defendant Johnson did not receive a letter that Plaintiff allegedly sent her on January 30, 2019, informing her of Plaintiff's TMJ concerns and requesting Ensure liquid protein drink ("Ensure").  Defendant Johnson did not sign the mail receipt and DOCCS staff did not forward the letter to her attention or otherwise make her aware of the letter.

6.      Dr. Johnson opined that in the event she had received Plaintiff's letter, she would not have provided Plaintiff with Ensure because it was not medically indicated and the medical providers at Clinton—including Defendants Devlin-Varin and Merriman—were providing Plaintiff with acceptable medical care to treat Plaintiff's TMJ.

---

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Jamison v. Metz*, 541 F. App'x 15, 18 (2d Cir. 2013) ("[A]pplying the standard set forth by the district court in its opinion, the <u>verified</u> compliant and Brown's affidavit were properly before the district court.") (emphasis added); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided it meets the other requirements for an affidavit under Rule 56(e).").

7.      On May 10, 2018, Plaintiff complained of pain in the left side of her face (the TMJ area) and cracking or popping in her jaw.  Plaintiff was examined by registered nurse Irene Walker, who provided Plaintiff with a slip to see another provider at the facility.

8.      On May 17, 2018, Defendant Devlin-Varin ordered an x-ray of Plaintiff's facial bones.  Defendant Devlin-Varin noted that the x-ray did not show any obvious abnormalities.  As is required, the x-ray was sent to an outside radiologist for review and a final interpretation.  Defendant Devlin-Varin encouraged Plaintiff to see dental, but Plaintiff declined and stated that she was going to "wait for the doctor."  Defendant Devlin-Varin advised Plaintiff to return to the facility hospital if she changed her mind.

9.      On May 18, 2018, Clinton received the x-ray report from the outside radiologist, which showed no fracture or other abnormality in Plaintiff's TMJ area.  The report stated that there was "NO EVIDENCE OF FX SEEN[, AND] NO EVIDENCE OF TEMPOROMANDIBULAR JOINT ["TMJ"] DISLOCATION."

10.      On May 24, 2018, registered nurse Kahn examined Plaintiff during a morning sick callout.  Plaintiff complained of a "popping noise" in her jaw.  Nurse Kahn noted that Plaintiff was ambulatory and in no acute distress and sent Plaintiff to dental at the facility.

11.      On June 1, 2018, Plaintiff was seen for similar complaints about her jaw "locking up" by Susan Golovach.[5]

---

[5]      Defendants allege that Ms. Golovach's notes stated that Plaintiff was having "no difficulty moving h[er] jaw while talking rapidly and complaining to the writer."  (Dkt. No. 90, Attach. 1 at ¶ 11; *see also* Dkt. No. 90, Attach. 5 at ¶ 26.)  However, based on the Court's review of Ms. Golovach's notes from that day, no such notation appears.  (Dkt. No. 91, Attach. 1 at 29-30.)

12. On July 10, 2018, based on a referral made by Clinton, Plaintiff was examined by an oral surgeon. The oral surgeon found no broken or fractured bones in Plaintiff's TMJ area and noted that Plaintiff's jaw was stable.[6]

13. On July 31, 2018,[7] Defendant Devlin-Varin examined Plaintiff because of a requested emergency sick call. Defendant Devlin-Varin stated in her progress notes that Plaintiff claimed that she was passing out (referred to as "fade out episodes"). Defendant Devlin-Varin noted that Plaintiff presented as hypertensive, refused treatment, and the fadeout episodes were unwitnessed by DOCCS staff.

14. During the visit on July 31, 2018, Plaintiff did not appear lethargic, weak, or in any acute distress. Plaintiff's gate was steady and she was alert. Defendant Devlin-Varin noted that Plaintiff was "talking very fast and moving from topic to topic." Defendant Devlin-Varin expressed concerns that Plaintiff was hypertensive and recommended further treatment, to which, Plaintiff declined.

15. Defendant Devlin-Varin ordered routine blood labs to determine if anything else was contributing to the symptoms that Plaintiff was experiencing.

16. To the extent that Plaintiff requested Ensure, Defendant Devlin-Varin declined to prescribe it, which was in accordance with the Health Services policy.

17. There is no indication that Ensure was medically indicated for Plaintiff.

---

[6] The Court notes that the majority of the handwritten notes by the oral surgeon are illegible. (Dkt. No. 91, Attach. 1 at 2.)

[7] The Court notes that the date of this progress note by Defendant Devlin-Varin reads "9-31-18," not July 31, 2018, as alleged by Defendants. However, Defendant Devlin-Varin's declaration states that the examination occurred on July 31, 2018. (Dtk. No. 90, Attach. 4 at ¶ 28.) Regardless, it does not appear that the date of this note or visit are material to the outcome of Defendants' motion.

18.     Ensure is not typically prescribed for TMJ.

19.     Inmates are generally advised to eat softer foods when they experience TMJ syndrome.

20.     According to the Health Service Policy, Ensure should only be given to individuals experiencing involuntary weight loss, with a body mass index of less than 18.5, or who have a clinical condition that prevents the individual from meeting their nutritional requirements through consumption of a regular diet (such as oral or gastrointestinal pathology, a hypermetabolic state, or the absence of teeth).

21.     To the extent that a dentist in the facility may have recommended Ensure to Plaintiff, the dentist was not authorized to do so because pursuant to Health Services Policy 1.46, the Facility Health Services Director is responsible for ensuring that nutritional supplements are given only when medically appropriate.  To the extent that a dentist or other medical provider outside the facility recommended Ensure to Plaintiff, this individual would not have been authorized to do so because he or she does not have privileges at the facility and would not have been following DOCCS policies.

22.     Plaintiff was in good health, had all her teeth, and was overweight.  As a result, she did not meet the criteria for Ensure according to the policy.

23.     Inmates are often fed softer foods, such as chicken patties with gravy, hot dogs, mashed potatoes, rice, and pasta.  Most days there is an alternative meal offered in place of the regular diet, which almost entirely consists of mechanical soft foods.

24.     Plaintiff was prescribed Motrin and Naproxen, which are commonly used to treat pain and discomfort.

25.     Pain is subjective and is difficult to measure.  If Plaintiff was experiencing any significant increase in pain, it may have manifested in her physical demeanor or appearance. The records indicate that Plaintiff was not in any acute distress when moving her jaw.

26.     Plaintiff's medical records indicate that she did not appear to be in any acute distress, she had full range of motion with her jaw, she could talk, eat, and carry out her daily activities, and she was not malnourished.[8]

27.     Defendant Merriman examined Plaintiff on February 9, 2018, during which, she took Plaintiff's weight and blood pressure, made a notation of those measurements in Plaintiff's medical file, and advised Plaintiff of the information.

28.     During the visit with Defendant Merriman on February 9, 2018, Plaintiff requested Ensure.  Defendant Merriman advised Plaintiff that she did not qualify for Ensure.

29.     Plaintiff was overweight (with a body mass index of 26.6), well nourished, and did not otherwise have a medical condition that qualified her to receive Ensure.  When Defendant Merriman declined to provide Plaintiff with Ensure, Plaintiff became agitated and upset.  Defendant Merriman could not refocus Plaintiff on her other medial issues.  Defendant Merriman was concerned about her own safety and therefore, decided to discontinue Plaintiff's appointment.

30.     Defendant Merriman did not make any threats, derogatory statements, or hostile comments towards Plaintiff.  Defendant Merriman did not make any statement to Plaintiff about

---

[8]     The Court notes that Defendants cite to, *inter alia*, the declaration of Defendant Johnson, paragraphs 34-40, in support of this asserted fact.  (Dkt. No. 90, Attach. 1 at ¶ 26 [citing Dkt. No. 90, Attach. 5 at ¶¶ 34-40; Dkt. No. 90, Attach. 4 at ¶¶ 38-43; Dkt. No. 91, Attachs. 1 and 2].) However, the declaration of Defendant Johnson was numbered with paragraphs ranging from one through thirty-seven.  (*See generally* Dkt. No. 90, Attach. 5.)  As a result, Defendants' citation refers to paragraphs of Defendant Johnson's declaration that are not before the Court. However, Defendants included other citations to the record that supported this contention.

getting money for those she killed.  In fact, Defendant Merriman was unaware of the crime for which Plaintiff was convicted and incarcerated.

31.    To the extent that another doctor inside or outside the facility recommended Ensure for Plaintiff, the doctor was not qualified to do so because any prescription for Ensure must be approved by the Health Services Director according to DOCCS's Health Services Policy 1.46.  Plaintiff was medically ineligible to be given Ensure pursuant to DOCCS's policy.

<u>Facts Related to Plaintiff's Failure to Protect Claim</u>

32.    On April 9, 2018, Plaintiff and another inmate were involved in a physical altercation.

33.    Defendant Bell received a letter from Plaintiff dated April 2, 2018, making claims about the other inmate, including that she was being sexually harassed by the other inmate. Defendant Bell facilitated an investigation into Plaintiff's claims, which was conducted by Sergeant Shutts.  Sergeant Shutts interviewed Plaintiff about her complaints, but Plaintiff stated that she had nothing to add to the complaint.

34.    Plaintiff indicated that the other inmate had not touched her sexually or forced her to do anything.  Plaintiff also admitted that she started the altercation with the other inmate.

35.    Plaintiff refused to sign a protective custody form.

36.    Sergeant Shutts also interviewed the other inmate involved in the altercation on April 9, 2018.  This inmate claimed that he did not know Plaintiff and that Plaintiff attacked him first.

37.    Defendant Marion was not personally involved in the allegations of Plaintiff's Complaint.  Defendant Marion did not make any threats or hostile comments to Plaintiff on April 19, 2018, or otherwise.  Defendant Marion was not working at Clinton on April 19, 2018.

38.     At the conclusion of Sergeant Shutt's investigation, he concluded that Plaintiff was likely trying to manipulate staff into transferring her to another facility.

39.     On April 9, 2018, after the incident, Defendant Holland was called upon to escort Plaintiff to Clinton's infirmary.  Defendant Holland directed another correction officer to apply mechanical restraints to both inmates and escorted them to the infirmary where they were examined.

40.     The medical provider at the infirmary found no significant injuries and documented no injuries on the accident injury report.

41.     At that time, in Defendant Holland's opinion, Plaintiff did not appear to be injured or in distress.

42.     Defendant Holland's memorandum to Lieutenant Guynup states that on April 9, 2018, after the incident, Plaintiff told Defendant Holland that the other inmate had been stalking her for days.

43.     After being treated at the facility infirmary, Defendant Holland supervised the escort of Plaintiff to a new cell.  Defendant Holland asked Plaintiff if she wanted protective custody, to which, Plaintiff responded no.

44.     Following the incident, Plaintiff was found guilty of starting the altercation with the other inmate.[9]

---

[9]     The Court notes that Defendants include an additional asserted statement of material fact. (Dkt. No. 90, Attach. 1 at ¶ 46.)  However, the Court finds that the citations to the record provided do not support the fact asserted.  As a result, the Court does not deem it to be an undisputed statement of material fact.

### D.    Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.    Defendants' Memorandum of Law-in-Chief

Generally, in support of their motion for summary judgment, Defendants assert the following three arguments: (1) there is no dispute as to any material fact that Defendants did not deprive Plaintiff of her constitutional rights to receive adequate medical care; (2) there is no dispute as to any material fact that Defendants did not fail to protect Plaintiff; and (3) Plaintiff's claims are barred by the doctrine of qualified immunity.  (Dkt. No. 90, Attach. 3 [Defs.' Mem. of Law].)

First, Defendants argue that Plaintiff fails to demonstrate a genuine issue of material fact regarding her medical indifference claim because she cannot establish the objective prong.  (*Id*. at 6-10.)  More specifically, Defendants argue that Plaintiff's TMJ condition was not significant enough to constitute a sufficiently serious medical condition pursuant to the Eighth Amendment. (*Id*.)  Moreover, Defendants argue that, regardless, Plaintiff was still provided adequate care and treatment for her medical condition, including a prompt x-ray, a referral to dental, a referral to an oral surgeon, and pain medication.  (*Id*.)  Further, Defendants argue that, to the extent Plaintiff requested Ensure, she did not meet the criteria under DOCCS Health Services policy 1.46 because she was not malnourished, underweight, or suffering a serious condition.  (*Id*.) Defendants argue, in the alternative, that Defendant Johnson was not personally involved in the care of Plaintiff because she was no longer employed at Clinton when Plaintiff sent her a letter requesting Ensure.  (*Id*.)  As a result, Defendants argue that Defendant Johnson did not receive Plaintiff's alleged letter and thus, did not deny Plaintiff's request for Ensure.  (*Id*.)

Second, Defendants argue that Plaintiff cannot demonstrate that Defendants deliberately disregarded a known risk of serious harm to her because (a) Defendant Bell facilitated an

investigation into Plaintiff's concerns regarding the other inmate and it was determined that there was no evidence to support Plaintiff's claims, (b) it was determined that Plaintiff initiated the altercation with the other inmate, (c) it is suspected that Plaintiff falsified the claims in hopes that she would be transferred to another prison, (d) Plaintiff declined protective custody after the incident on April 9, 2018, and (e) Plaintiff did not inform Defendants Marion and Holland of her concerns with the other inmate and they did not become aware of any other information that would lead them to believe that Plaintiff was in imminent risk of harm.  (*Id*. at 10-11.)

Third, Defendants argue that they are entitled to qualified immunity.  (*Id*. at 11-13.) More specifically, Defendants argue that they properly denied Plaintiff's request for Ensure because it was not medically indicated and Defendants were following DOCCS's Health Services Policy 1.46.  (*Id.*)  As a result, Defendants argue that any reasonable health care professional in their position in the prison would have believed that their actions did not violate any clearly established law.  (*Id*.)  Further, Defendants argue that they had no reason to believe that Plaintiff was in any danger based on (a) the lack of evidence of a threat following the investigation, (b) Plaintiff's failure to inform Defendants Marion and Holland of the threat, and (c) Plaintiff's declination to sign a protective custody form.  (*Id*.)  As a result, Defendants argue that no reasonable correctional official in Defendants' position in the prison would have believed that their actions violated any clearly established law.  (*Id*.)

### 2.    Plaintiff's Opposition Memorandum of Law[10]

Generally, in opposition to Defendants' motion for summary judgment, Plaintiff asserts the following seven arguments: (1) she has demonstrated that she was incarcerated under conditions posing a substantial risk of serious harm to her person; (2) she has demonstrated the subjective prong of a failure to protect claim because Defendants Holland and Marion failed to transfer Plaintiff to a more secure location and mere knowledge that Plaintiff was transgender is sufficient to put prison officials on notice that she was susceptible to an attack; (3) Plaintiff has demonstrated that her medical condition was sufficiently serious because it (a) was worthy of comment, (b) affected her daily activities, and (c) was worthy of treatment; (4) she has demonstrated a genuine dispute of material fact with respect to her claim against Defendant Johnson because Plaintiff was prescribed Ensure by the oral surgeon on October 9, 2018, and Plaintiff sent Defendant Johnson a letter dated November 14, 2018, regarding the fact that she was not receiving the prescribed Ensure, which slowed her TMJ injury from healing; (5) Plaintiff demonstrated that after she submitted a grievance against Defendants Devlin-Varin and Merriman, they justified their retaliation by stating that Clinton lacked funds for Ensure and naproxine; (6) Plaintiff demonstrated that Defendant Bell was deliberately indifferent to Plaintiff's medical needs; and (7) Plaintiff demonstrated that she was harmed as a result of the inadequate medical care because the healing of her TMJ was slowed due to inadequate nutrition. (Dkt. No. 165, Attach. 1 [Pl.'s Mem. of Law].)

---

[10]    In the future, Plaintiff is cautioned to comply with Local Rule 7.1(b)(1), which provides, "[n]o party shall file or serve a memorandum of law that exceeds twenty-five (25) pages in length, double-spaced, unless that party obtains leave of the judge hearing the motion prior to filing." Plaintiff's memorandum of law, while hand-written, exceeds this page limit and Plaintiff failed to obtain leave of the Court before filing.

### 3.     Defendants' Reply Letter Brief[11]

Generally in further support of their motion for summary judgment, Defendants assert the following four arguments: (1) Plaintiff's TMJ condition was not significant enough to constitute a sufficiently serious medical condition under the Eighth Amendment because (a) Plaintiff did not sustain any fracture or other abnormality in the TMJ area, (b) Plaintiff failed to present as having any pain or difficulty chewing, and (c) Plaintiff appeared well-nourished; (2) Ensure was not medically indicated for Plaintiff and any outside provider's recommendation for Ensure was of no consequence because Clinton's health director had to approve the provision of a nutritional supplement; (3) Defendant Bell investigated Plaintiff's complaints and found them to be unsupported and Defendants Marion and Holland were not otherwise aware of information that would lead them to believe that Plaintiff was in imminent risk of harm; and (4) after the altercation on April 9, 2018, Defendant Holland escorted Plaintiff and another inmate to the facility hospital, Plaintiff did not have any injuries, and refused protective custody, thus there is no issue of material fact that Defendants Holland and Marion did not deliberately disregard a threat of harm to Plaintiff. (*See generally* Dkt. No. 113 [Defs.' Letter Reply].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Standard Governing A Motion For Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty*

---

[11]     In the future, defense counsel is cautioned to comply with Local Rule 7.1(b)(1), which provides that "[a]ll memoranda of law shall contain a table of contents."

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).[12]  As for the materiality requirement, a dispute of fact is

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

  In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ.

P. 56(a), (c), (e).

  Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute–even if that non-

movant is proceeding *pro se*.[13]  (This is because the Court extends special solicitude to the *pro se*

litigant largely by ensuring that he or she has received notice of the consequences of failing to

properly respond to the motion for summary judgment.)[14]  As has often been recognized by both

---

[12] As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[13] *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[14] *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's

procedural rules.[15]

Of course, when a non-movant willfully fails to respond to a motion for summary

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material

facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v.*

*Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.);

N.D.N.Y. L.R. 56.1.  What the non-movant's failure to respond to the motion does is lighten the

movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set

forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

statement[16]–even when the non-movant was proceeding *pro se*.[17]

Similarly, in this District, where a non-movant has willfully failed to respond to a

movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed

to have "consented" to the legal arguments contained in that memorandum of law under Local

---

[15]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

[16]    Among other things, Local Rule 56.1 (previously Local Rule 7.1[a][3]) requires that the
non-movant file a response to the movant's Statement of Material Facts, which admits or denies
each of the movant's factual assertions in matching numbered paragraphs, and supports any
denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1.

[17]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*,
253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to
"perform an independent review of the record to find proof of a factual dispute.").

Rule 7.1(a)(3).[18]  Stated another way, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant may succeed on the argument by showing that the argument

possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See*

N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined

that the moving party has met its burden to demonstrate entitlement to the relief requested therein

. . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30,

2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at

*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.   Legal Standard Governing Deliberate Indifference to Serious Medical Needs Under the Eighth Amendment

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an

inmate violates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (quoting

*Helling v. McKinney*, 509 U.S. 25, 25 (1993)).  Within that framework, "[t]he Cruel and Unusual

Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure

that inmates receive adequate medical care."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir.

2006); *accord, Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  However, "[b]ecause society does

not expect that prisoners will have unqualified access to health care, deliberate indifference to

medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"

---

[18]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31
(N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to
oppose several arguments by defendants in their motion for summary judgment as consent by
plaintiff to the granting of summary judgment for defendants with regard to the claims that the
arguments regarded, under Local Rule 7.1(a)(3) (previously Local Rule 7.1[b][3]); *Devito v.
Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004)
(McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude
expert testimony as "a concession by plaintiff that the court should exclude [the expert's]
testimony" on that ground).

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-04).  In this context, a prison official violates the Eighth Amendment only when two requirements are satisfied. *Farmer*, 511 U.S. at 834.

### 1.    Objective Requirement–Serious Medical Needs

"The first requirement is objective: the alleged deprivation of adequate medical care must be 'sufficiently serious.'"  *Salahuddin*, 467 F.3d at 279 (citation and internal quotation marks omitted); *accord*, *Farmer*, 511 U.S. at 834.  Evaluation of the objective prong involves two inquiries: (1) "whether the prisoner was actually deprived of adequate medical care," and (2) "whether the inadequacy in medical care is sufficiently serious."  *Salahuddin*, 467 F.3d at 279-80.

With regard to the first inquiry, because a prison official need only provide "reasonable care," one who acts reasonably in response to an inmate's health risk "cannot be found liable under the Cruel and Unusual Punishments clause."  *Id.* at 279-80 (quoting *Farmer*, 511 U.S. at 847).  "The word 'adequate' reflects the reality that '[p]rison officials are not obligated to provide inmates with whatever care the inmates desire.'"  *Banks v. Annucci*, 48 F. Supp. 3d 394, 408-09 (N.D.N.Y. 2014) (Hurd, J.) (quoting *Jones v. Westchester Cnty. Dept. of Corrs. Med. Dept.*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008)).

With regard to the second inquiry, determining whether the alleged inadequacy was "sufficiently serious" involves an examination of "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *Salahuddin*, 467 F.3d at 280 (citation omitted).  If the unreasonable medical care alleged was a "failure to provide any treatment" for the inmate's medical condition, courts examine whether the condition itself is sufficiently serious.  *Id.*; *see also Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)

("There is no need to distinguish between a prisoner's underlying 'serious medical condition' and the circumstances of his 'serious medical need' when the prisoner alleges that prison officials have failed to provide general treatment for his medical condition.") (footnote omitted). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin*, 467 F.3d at 280 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *accord, Rodriguez v. Manenti*, 606 F. App'x 25, 26 (2d Cir. 2015) (summary order); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("Objectively, the alleged deprivation must be 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists.") (citation omitted). "A finding of a serious medical need 'is necessarily contextual and fact-specific,' and thus 'must be tailored to the specific circumstances of each case.'" *Shenk v. Cattaraugus Cnty.*, 305 F. App'x 751, 753 (2d Cir. 2009) (summary order) (quoting *Smith*, 316 F.3d at 185).

However, "[i]n cases where the inadequacy is in the medical treatment given," as opposed to a complete absence of treatment, "the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than' [the inmate's medical condition]." *Id.* (quoting *Smith*, 316 F.3d at 185). "In other words, the Court asks 'whether, from an objective standpoint, the temporary deprivation was sufficiently harmful to establish a constitutional violation.'" *Kidkarndee v. Koenigsmann*, 12-CV-0502, 2014 WL 1239319, at *14

(N.D.N.Y. Mar. 25, 2014) (Suddaby, J., adopting Report-Recommendation of Hummel, M.J.)

(quoting *Frank v. Cnty. of Ontario*, 884 F. Supp. 2d 11, 19 (W.D.N.Y. 2012)).

## 2.    Subjective Requirement–Deliberate Indifference

"The second requirement for an Eighth Amendment violation is subjective: the charged

official must act with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. "[A]

complaint that a physician has been negligent in diagnosing or treating a medical condition does

not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S.

at 106; *accord, Daniels v. Williams*, 474 U.S. 327, 331-33 (1986) (explaining that "injuries

inflicted by governmental negligence are not addressed by the United States Constitution").

"[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of

mind more blameworthy than negligence," *Farmer*, 511 U.S. at 835, equivalent to "subjective

recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280; *Smith*, 316 F.3d

at 184. "This mental state requires that the charged official act or fail to act while actually aware

of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280; *accord,*

*Farmer*, 511 U.S. at 837-38 ("An act or omission unaccompanied by knowledge of a significant

risk of harm might well be something society wishes to discourage, and if harm does result

society might well wish to assure compensation. The common law reflects such concerns when it

imposes tort liability on a purely objective basis."). Because this inquiry is subjective, "[p]rison

officials may . . . introduce proof that they were not so aware, such as testimony that 'they knew

the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was

insubstantial or nonexistent.'" *Salahuddin*, 467 F.3d at 280 (quoting *Farmer*, 511 U.S. at 844).

However, "evidence that the risk was obvious or otherwise must have been known to a defendant

is sufficient to permit a jury to conclude that the defendant was actually aware of it." *Brock v.*

*Wright*, 315 F.3d 158, 164 (2d Cir. 2003). "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Chance*, 143 F.3d at 703.

## III.    ANALYSIS

### A.    Whether A Genuine Dispute as to Any Material Fact Exists That Defendants Did Not Deprive Plaintiff of Her Constitutional Rights to Receive Adequate Medical Care

After carefully considering the matter, I recommend that the Court answer this question in the affirmative.

Defendants only appear to move with respect to Plaintiff's inability to demonstrate a genuine issue of material fact exists regarding the objective prong of her medical indifference claim.

With respect to the first inquiry in the evaluation of the objective prong, I find that Plaintiff was not actually deprived of adequate medical care.

The record is devoid of evidence that Plaintiff received medical care that was inadequate. Instead, the record contains declarations from Defendants Johnson (a New York State-licensed physician), Devlin-Varin (a New York State-licensed Family Nurse Practitioner), and Merriman (a New York State-licensed Nurse Practitioner), attesting to the fact that the care Plaintiff received was adequate. (*See* Dkt. No. 90, Attach. 4 at ¶ 15 [Declaration of Defendant Devlin-Varin stating that "[f]rom my review of the records, Plaintiff received adequate care for h[er] condition."]; Dkt. No. 90, Attach. 4 at ¶ 45 [Declaration of Defendant Devlin-Varin stating that "[a]ny reasonable health care provider in my profession would believe that this level of care and treatment was adequate to treat Plaintiff[']s[] condition."]; Dkt. No. 90, Attach. 5 at ¶ 21 [Declaration of Defendant Johnson stating that "[f]rom my review of the records . . . Plaintiff received appropriate care for h[er] medical condition."]; Dkt. No. 90, Attach. 5 at ¶ 37

[Declaration of Defendant Johnson stating that "any reasonable health care professional in Defendants' professions would believe that the level of care and treatment provided to the Plaintiff was appropriate to treat h[er] medical condition."]; Dkt. No. 90, Attach. 6 at ¶ 11 [Declaration of Defendant Merriman stating "[f]rom my review of the records, Plaintiff received adequate care for h[er] condition."]; Dkt. No. 90, Attach. 6 at ¶ 25 [Declaration of Defendant Merriman stating "[a]ny reasonable health care provider in my profession would believe that this level of care and treatment was adequate to treat Plaintiff[']s[] condition."].)

Moreover, a review of Plaintiff's medical records indicate that the care she received was adequate. On May 10, 2018—approximately one month after the incident on April 9, 2018—Plaintiff was examined by a nurse at Clinton's medical facility where she complained of pain in her TMJ area. (Dkt. No. 91, Attach. 1 at 31.) On May 17, 2018, an x-ray was completed of Plaintiff's facial bones. (*Id*. at 24.) The x-rays did not show any evidence of a fracture or TMJ dislocation. (*Id*. at 6-7.) On July 10, 2018, Plaintiff was examined by an oral surgeon, who found no broken or fractured bones and noted that Plaintiff's jaw was stable. (*Id*. at 25.)

Numerous times throughout the next several months Plaintiff was observed by medical providers in no acute distress. (*Id*. at 28-29.) For example, on July 10, 2018, Plaintiff's medical records reflect that she was "talking fine[,] [and had n]o issue with [her j]aw moving or [being] unable to complete sentences." (*Id.* at 24.) Moreover, on July 31, 2018,[19] it was noted that Plaintiff was "talking very fast & moving from topic to topic." (*Id*.)

Plaintiff was also encouraged to see dental at Clinton for further care and treatment. (*Id*. at 24, 29, 31.)

---

[19] *See*, *supra*, note 7.

Thus, no genuine dispute of material fact exists that Defendants provided reasonable care to Plaintiff.  As a result, I recommend that Defendants' motion for summary judgment on Plaintiff's medical indifference claim be granted.  *See Moore v. Kwan*, 12-CV-4120, 2016 WL 9022575, at *9 (S.D.N.Y. Mar. 30, 2016) ("Having made the determination that [the plaintiff] received adequate medical care, I need not assess (1) to what degree the alleged medical care was inadequate, or (2) the harm the alleged medical care caused or will cause in the future.").

In the alternative, to the extent that the Court finds that Plaintiff was deprived adequate medical care, I recommend that the Court grant Defendants' motion because any inadequacy was not sufficiently serious.

The parties discuss at length whether Plaintiff's TMJ condition was itself a sufficiently serious medical condition.[20]  However, the record is clear that Defendants did not "fail[] to provide any treatment" for Plaintiff's medical condition, *Salahuddin*, 467 F.3d at 280; *Smith*, 316 F.3d at 185-86, therefore, "the seriousness inquiry [here] is narrower" and "the [focus of the]

---

[20]    The Court need not resolve this issue but notes that the Second Circuit has found that serious pain lasting over six months was sufficient for a deliberate indifference claim. *Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998); *see Hardy v. City of New York*, 732 F. Supp. 2d 112, 131-32 (E.D.N.Y. 2010) (holding an ear infection that caused "unbearable" pain, swelling and drainage satisfied the objective prong of the Eighth Amendment deliberate indifference claim); *Dennis v. Milicevic*, 97-CV-7147, 1998 WL 474200, at *3 (S.D.N.Y. Aug. 13, 1998) ("serious physical pain over an extended period of time" may be sufficiently serious where medical care is deprived); *but see Shepard v. Kelly*, 19-CV-0669, 2021 WL 1600495, at *3 (S.D.N.Y. Apr. 23, 2021) (holding that the plaintiff failed to allege a sufficiently serious medical condition where he alleged he suffered "chest pain" but did not allege that he actually suffered injury or long-term effects as a result of the alleged neglect); *Hernandez v. Goord*, 02-CV-1704, 2006 WL 2109432, at *6 (S.D.N.Y. July 28, 2006) (finding that the severity of the plaintiff's foot injury did not warrant Eighth Amendment protection because even though the plaintiff had trouble walking and the injury was painful, the plaintiff did not argue that "his injury rose to the level of being life-threatening"); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) (finding that mere allegations of "'chest pains' and 'discomfort' in [the plaintiff's] chest" were insufficient to trigger an Eighth Amendment claim, although noting that "a severe heart condition can be sufficiently 'serious'"); *Alston v. Howard*, 925 F. Supp. 1034, 1040 (S.D.N.Y. 1996) (finding that ankle pain after surgery was not sufficiently serious).

inadequacy [inquiry] is in the medical treatment given" as opposed to a complete absence of treatment. *Salahuddin*, 467 F.3d at 280.

For the reasons set forth above, I find that, to the extent the medical treatment provided to Plaintiff was inadequate, no reasonable factfinder could conclude that the inadequacy was sufficiently serious.

Although Plaintiff requested—and was denied—Ensure nutritional supplement, her arguments reflect a mere disagreement over proper treatment. *See Chance*, 143 F.3d at 703 ("It is well-established at mere disagreement over the proper treatment does not create a constitutional claim."); *see also Estelle*, 429 U.S. at 107 ("A medical decision not to order an X-ray[] or like measures" "is a classic example of a matter for medical judgment" that "does not represent cruel and unusual punishment."). According to DOCCS's Health Services Policy 1.46, Plaintiff did not meet the criteria for Ensure. (Dkt. No. 90, Attach. 5 at ¶ 31.) More specifically, Plaintiff was not experiencing involuntary weight loss,[21] her body mass index was over 18.5, and she did not have a clinical condition that prevented her from obtaining nutritional requirements through consumption of a regular diet.[22] (*Id.*) In addition, as set forth in Defendant Johnson's declaration, at Clinton, an alternative meal is generally offered that consists almost entirely of

---

[21]    Construing the facts in the light most favorable to Plaintiff, Plaintiff was 182 pounds when she entered Clinton and her weight fluctuated nine pounds. (Dkt. No. 109 at 9.) "While weight loss alone may not constitute a serious medical condition, rapid weight loss or weight loss coupled with other conditions may present a serious medical condition." *Anderson v. Kooi*, 07-CV-1257, 2011 WL 1315721, at *12 (N.D.N.Y. Jan. 24, 2011) (Baxter, M.J.) (citing *Kaminsky v. Rosenblum*, 929 F.2d 922, 924 (2d Cir. 1991)). There is no evidence before the Court that this nine-pound weight fluctuation occurred rapidly or was coupled with any other conditions that could constitute a serious medical condition. In fact, the record indicates that on February 8, 2019, Plaintiff weighed 180 pounds, with a BMI of 26.6, which is considered overweight. (Dkt. No. 90, Attach. 4 at ¶ 34; Dkt. No. 90, Attach. 6 at ¶¶ 15-22; Dkt. No. 91, Attach. 1 at 189.)

[22]    Plaintiff's medical records also indicate that she was "not having [any] issue chewing." (Dkt. No. 91, Attach. 1 at 104.)

mechanical soft foods.  (*Id*. at ¶ 32.)  Further, Plaintiff appeared able to eat solid foods, she had a

full range of motion in her jaw, she was not under-weight or malnourished, and she did not

present with a significant injury or pain in the TMJ area.  (Dkt. No. 90, Attach. 4 at ¶ 38.)

Finally, the Court notes that Plaintiff's medical records reflect that she denied any weight loss

due to her jaw injury.  (Dtk. No. 91, Attach. 1 at 22.)

Moreover, Plaintiff appears to contend that she sought—and was denied—stronger or

more pain medication.  (Dkt. No. 32 at ¶¶ 41, 46.)  As Defendant Johnson's declaration sets

forth, Plaintiff did not appear in any acute distress when moving her jaw talking to her medical

providers.  (Dkt. No. 90, Attach. 5 at ¶¶ 33-36; *see* Dkt. No. 91, Attach. 1 at 104 [noting that

Plaintiff was "moving [her] jaw well when telling RN about discomfort"]; Dkt. No. 91, Attach. 1

at 106 [noting that Plaintiff had "no difficulty speaking in full/complete sentences"]; Dkt. No.

91, Attach. 1 at 107 [noting that Plaintiff was in "no acute distress" and observed "sitting on

exam table moving jaw [no] issue at present."]); *see also Williams v. Williams*, 13-CV-3154,

2015 WL 568842, at *5 (S.D.N.Y. Feb. 11, 2015) (collecting cases) ("[C]ourts have repeatedly

declined to find that a medical provider was deliberately indifferent to an inmate's medical

needs" when a plaintiff challenges "the type and quantity of pain medication."); *Brown v. White,*

08-CV-0200, 2010 WL 985184, at *10 (N.D.N.Y. Mar. 15, 2010) (Baxter, M.J.) (holding that

the plaintiff's "subjective claims of . . . pain, unaccompanied by substantial medical

complications" were inadequate to create a genuine issue of material fact as to whether his

condition was sufficiently serious to warrant more immediate treatment); *Wright v. Genovese*,

694 F. Supp. 2d 137, 160 (N.D.N.Y. Mar. 9, 2010) ("concern about prescribing narcotic pain

medication, on which inmates with possible substance abuse issues could become dependent,

may inform a medical judgment about what drug to prescribe."); *Benitez v. Pecenco*, 92-CV-

7670, 1995 WL 444352, at *3 (S.D.N.Y. July 27, 1995) (granting summary judgment where "nothing in the record . . . suggest[ed] that plaintiff's back pain was severe or excruciating[,]" no medical personnel noted he was in "acute distress or had any difficulty standing or walking[,]" and his complaints were "only sporadic[]").

As a result, I find that, in the alternative, there is no genuine dispute of material fact that, to the extent Defendants provided inadequate medical care, that inadequacy was sufficiently serious.[23]

### B. Whether A Genuine Dispute as to Any Material Fact Exists That Defendants Failed to Protect Plaintiff

After carefully considering the matter, I answer this question in the affirmative.

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 831 (1994)). This requirement includes a general "duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833.

However, not "every injury suffered by [a] prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Prison officials can be held responsible for such harms only if they act with "deliberate indifference" to inmate safety. *Hayes*, 84 F.3d at 620. The test for establishing deliberate indifference to inmate safety has an objective component and subjective component. First, under the objective prong, a plaintiff must show that he was "incarcerated under conditions posing a

---

[23]    In the alternative, I recommend that Plaintiff's claim against Defendant Johnson be dismissed because Plaintiff fails to demonstrate Defendant Johnson's personal involvement in any constitutional violation, for the reasons stated in Defendants' memorandum of law. (Dkt. No. 90, Attach. 3 at 9-10.)

substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Second, under the subjective prong, a plaintiff must establish that the prison official acted with a "sufficiently culpable state of mind." *Id*.

To evaluate culpability under an Eighth Amendment deliberate indifference framework, a prison official must know that the plaintiff "face[d] a substantial risk of harm and he disregard[ed] that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 842, 845). The prison official need not be "aware[ ] of the specific risk to the plaintiff or from the assailant." *Warren v. Goord*, 579 F. Supp. 2d 488, 495 (S.D.N.Y. 2008). Rather, the risk may come from a "single source or multiple sources" and may be a risk that all prisoners in the plaintiff's position face. *Warren*, 579 F. Supp. 2d at 495 (quoting *Farmer*, 511 U.S. at 843).

Defendants' argument focuses on the subjective prong.[24] (Dkt. No. 90, Attach. 3 at 10-11.) The Court finds that a genuine issue of material fact remains as to whether Defendants Holland and Marion acted with a sufficiently culpable state of mind. Defendants appear to entirely disregard Plaintiff's allegations in the Amended Complaint regarding her attempts to obtain protection *before* the incident on April 9, 2018. (Dkt. No. 32 at ¶¶ 11-16.)

---

[24]    As a result, the Court need not rule at this time regarding the objective prong. The Court merely notes that Defendants Holland and Marion, hold different positions throughout the prison hierarchy, but common to those positions is a responsibility to ensure the safety of the inmates at Clinton. (Dkt. No. 90, Attach. 2 at 17; Dkt. No. 90, Attach. 8 at ¶ 1; Dkt. No. 113 at 5.) It is axiomatic "that transgender inmates face heightened risks of sexual assault, including in DOCCS facilities, [which] render[s] it plausible that Defendants, concerned about the safety of [Clinton]'s inmates, were aware that Plaintiff 'belongs to an identifiable group of prisoners who are frequently singled out for violent attacks by other inmates,' *Farmer*, 511 U.S. at 843, and thus was subject to a heightened risk of harm as a transgender prisoner in a male prison." *Manning v. Griffin*, 15-CV-0003, 2016 WL 1274588, at *7 (S.D.N.Y. Mar. 31, 2016) (collecting cases).

Plaintiff alleged in the Amended Complaint that she sent Defendant Marion a letter on March 3, 2018, stating that she was gender nonconforming, experiencing sexual harassment, and requested protective custody.  (Dkt. No. 32 at ¶¶ 14-15.)  In addition, the Amended Complaint alleges that on March 29, 2018, Plaintiff sent Defendant Marion another letter requesting protective custody because she feared for her safety.  (*Id*. at ¶ 16.)  Defendant Marion's declaration acknowledges Plaintiff's allegations that he "failed to protect [her] from allegedly being assaulted by another inmate and that [he] could have prevented the alleged assault on Plaintiff by adhering to [her] letters of complaint regarding sexual harassment by said other inmate."  (Dkt. No. 90, Attach. 8 at ¶ 3.)  However, Defendant Marion's declaration then entirely fails to discuss the letters that Plaintiff allegedly sent him.  (*See generally* Dkt. No. 90, Attach. 8.)  Instead, Defendant Marion's declaration discusses his actions after the incident on April 9, 2018.  (*Id*.)

Without information regarding whether—and if so, when—Defendant Marion received Plaintiff's letters and what, if any, action he took in response to becoming aware of a substantial risk to Plaintiff, the Court is unable to conclude whether Defendant Marion deliberately disregarded a known risk of serious harm to Plaintiff.  If Defendant Marion received a letter from Plaintiff over one month before the incident on April 9, 2018, highlighting the substantial harm that Plaintiff faced, and Defendant Marion failed to take reasonable measures to abate that harm, a reasonable juror may conclude that Defendant Marion failed to protect Plaintiff.

Further, the Amended Complaint alleged that Plaintiff sent letters to Defendant Holland on March 5, 2018, and March 29, 2018, seeking protective custody because she was gender nonconforming and was being stalked and harassed.  (Dkt. No. 32 at ¶¶ 11-13.)  Defendants did not include any declaration from Defendant Holland in their initial motion papers.  (*See*

*generally* Dkt. No. 90.)  Instead, Defendants directed the Court to a memorandum prepared by

Defendant Holland after the incident on April 9, 2018.  (Dkt. No. 90, Attach. 3 at 11 [citing *inter*

*alia* Dkt. No. 90, Attach. 2 at 17].)  In their reply papers, Defendants included an affidavit of

Defendant Holland.[25]  (Dkt. No. 113 at 5-8.)  Defendant Holland declared that "[a]t no time

during my escort of the Plaintiff on [April 9, 2018], did [s]he advise me that [s]he was being

stalked by Inmate Lynch."  (Dkt. No. 113 at 6 ¶ 6.)  In addition, Defendant Holland declared that

"[f]ollowing the incident, I documented my involvement in a memo to lt. M. Guymup [sic]. I

maintain my position in this Memo."  (*Id.* at ¶ 7 [citation omitted].)  However, in stark contrast

with his declaration, Defendant Holland's memorandum to Lieutenant Guynup dated April 9,

2018, states that "Inmate Braxton stated that inmate Lynch had been 'stalking [her]' for days."

(Dkt. No. 90, Attach. 2 at 17, 27, 31.)

At this juncture, the Court is unable to resolve these conflicting positions that Defendant

Holland has presented.  To the extent that Defendant Holland was aware of a substantial risk to

Plaintiff and failed to take reasonable measures to abate that harm, a reasonable juror may

conclude that Defendant Holland failed to protect Plaintiff.

As a result, I recommend that the Court deny Defendants' motion for summary judgment

with respect to Plaintiff's failure to protect claim.

### C.    Whether Defendants Are Entitled to Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of

---

[25]    The Court notes that "a party may not attempt to cure deficiencies in its moving papers by including new evidence in its reply to opposition papers."  *Burroughs v. Cnty. of Nassau*, 13-CV-6784, 2014 U.S. Dist. LEXIS 79224, *28 (E.D.N.Y. Mar. 19, 2014); *see ABN AMRO Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 97 n.12 (2d Cir. 2007) ("We decline to consider an argument raised for the first time a reply brief.").

which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords

government officials 'breathing room' to make reasonable—even if sometimes mistaken—

decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v.

Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and

'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v.

McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d

Cir. 2010)).

"The doctrine of qualified immunity shields officials from civil liability so long as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal

quotations and citations omitted). The Court has discretion to determine the order in which it

will address the inquiries required when assessing the applicability of qualified immunity. *See

Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson* 555 U.S. at 236).

A right is clearly established if, "at the time of the challenged conduct . . . every

'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft

v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

There is no requirement that a case have been decided which is directly on point, "but existing

precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft,

563 U.S. at 741.*

In addition, qualified immunity protects state actors when it was objectively reasonable

for the state actor to believe that his conduct did not violate a clearly established right.

*Manganiello v. City of N. Y.,* 612 F.3d 149, 165 (2d Cir. 2010). "If a reasonable officer might

not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1867 (2017). Therefore, the district court may first ask whether it was objectively reasonable for any of the defendants to believe their conduct was not unlawful at the time. *Simpson v. City of N. Y.*, 793 F.3d 259, 268 (2d Cir. 2015). Qualified immunity does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

In the alternative, I find that Defendants Bell, Johnson, Devlin-Varin, and Merriman are entitled to qualified immunity. "As an alternative ground for dismissal, and based upon the same record evidence from which the Court concludes that Defendants' acts did not rise to the level of [inadequate medical care or inadequate medical care that was sufficiently serious], Defendants are protected from liability as a matter of law by the doctrine of qualified immunity." *Marino v. Koenigsmann*, 12-CV-1170, 2016 WL 1298726, at *22 (N.D.N.Y. Mar. 31, 2016) (Suddaby, C.J.) (citing *Soto v. Wright*, 11-CV-2289, 2013 WL 474291, at *7 n.9 (S.D.N.Y. Feb. 1, 2013), *adopted*, 2013 WL 754711, at *1 (S.D.N.Y. Feb. 28, 2013) ("Defendants are entitled to qualified immunity because Soto has not only failed to establish a constitutional deprivation, but 'no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.'")).

However, I reject Defendants' arguments that Defendants Holland and Marion are protected from liability as a matter of law by the doctrine of qualified immunity. Defendants appear to merely repeat arguments from elsewhere in their brief. (Dkt. No. 90, Attach. 3 at 12-

13); *cf. Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 467 (S.D.N.Y. 2012) (denying a qualified immunity application where the defendant "ha[d] not identified any changes in the legal standards"). "Nor is the law regarding failure to protect inmates unsettled or unclear." *Jenkins . Officer S (Downstate)*, 19-CV-10728, 2021 WL 4392611, at *5 (S.D.N.Y. Sept. 24, 2021) (citing *Farmer*, 511 U.S. at 834 (describing the requirements for an Eighth Amendment failure to protect claim); *Lewis v. Siwicki*, 944 F.3d 427, 430-31 (2d Cir. 2019) (same)). Thus, I reject Defendants' qualified immunity argument with respect to Defendants Holland and Marion, and recommend that the Court deny their motion insofar as it seeks to dismiss Plaintiff's failure to protect claim against them.

      **ACCORDINGLY**, it is respectfully

      **RECOMMENDED** that Defendants' motion for summary judgement (Dkt. No. 90) be **<u>GRANTED</u>** in so far as it seeks dismissal of Plaintiff's medical indifference claim against Defendants Bell, Johnson, Devlin-Varin, and Merriman, and **<u>DENIED</u>** in so far as it seeks dismissal of Plaintiff's failure to protect claim against Defendants Holland and Marion; and it is further respectfully

      **RECOMMENDED** that Defendants Bell, Johnson, Devlin-Varin, and Merriman be **<u>TERMINATED</u>** from this action; and it is further

      **ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[26]

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be

---

[26]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984

F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated:  February 15 , 2022
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge